**COMMUNITY OF CAMBRIDGE ENVIRONMENTAL HEALTH AND COMMUNITY DEVELOPMENT GROUP, et al.,**

v.

**CITY OF CAMBRIDGE, et al.**

Civil No. CCB–98–1612.

United States District Court, D. Maryland.

Aug. 23, 2000.

Mark F. Gabler, Timothy R. Henderson, Rich and Henderson, P.C., Annapolis, MD, for Plaintiffs.

Sean Coleman, Robert Lindsay Munroe, Office of the Attorney General, Annapolis, MD, P. Michael Cunningham, Office of the United States Attorney, Balimore, MD, for Defendants.

### *MEMORANDUM*

BLAKE, District Judge.

The Community of Cambridge Environmental Health and Development Group, the Vestry of Christ Episcopal Church, and 27 individuals (collectively, the "Plaintiffs") have brought a citizens suit under Section 505 of the Clean Water Act (the "CWA"), as amended, 33 U.S.C. § 1365, against the City of Cambridge, its Mayor, and the Commissioners of the City of

Cambridge (collectively, the "City"),[1] alleging violations of the terms and conditions of the City's Discharge Permit, violations of the conditions of the Consent Order, and violations of the Act, in that unpermitted discharges of pollutants have occurred and are continuing to occur. The City filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), claiming a lack of subject matter jurisdiction, and Rule 12(b)(6), claiming that the Plaintiffs failed to state a claim against the City upon which relief could be granted. This court heard oral argument on the motion on December 10, 1999. For the reasons stated below, the City's motion to dismiss will be granted.

### BACKGROUND

Accepting all well-pleaded allegations in the Plaintiffs' complaint as true and drawing all reasonable factual inferences from those facts in the Plaintiffs' favor, the salient facts are as follows. The City of Cambridge is situated on the south bank of the Choptank River, a tributary of the Chesapeake Bay, and provides public water supply and waste water collection and treatment to its residents and surrounding areas in Dorchester County. Part of the City of Cambridge, along the Choptank River and Cambridge Creek, is served by a combined sewage and storm water collection and drainage system ("CSS") and the remainder by separate sanitary sewers. The existing CSS has fifteen (15) permitted discharge points into the Choptank River and Cambridge Creek. (Amended Compl. ¶ 43)

The Maryland Department of the Environment ("MDE") has, since 1974, been authorized by the Administrator of the EPA to issue National Pollutant Discharge Elimination System ("NPDES") permits, whereby the recipient of the permit is authorized to discharge specific amounts of certain pollutants into navigable waters. (*Id.* ¶¶ 37, 42) On October 1, 1991, MDE

1. Plaintiffs' suit against Maryland Environmental Services and its Director, James W. Peck, in his official capacity, was dismissed by Order dated January 5, 2000.

issued to the City its current Permit, which is both a Maryland discharge permit and an NPDES permit. (*Id.* ¶ 44) Section II.G.1 of the Permit provides that "discharges during dry weather are prohibited." MDE and EPA define "dry weather flow" as the flow in a combined sewer system that results from domestic sewage, groundwater infiltration, industrial and commercial wastewater, and any other non-precipitation related flows, such as tidal infiltration. (*Id.* ¶ 45)

Section II.G.2 of the Permit provides that the City will develop a plan of action within six months of the issuance of the Permit to control solid and floatable materials from the CSS, to notify the public of combined sewer overflows ("CSO's") and impacts, and to monitor the CSO's to effectively characterize their impacts and the efficacy of CSO controls. (*Id.* ¶ 46)

Acting partially in response to citizen complaints, on November 24, 1993, MDE filed a Complaint for Injunction and Civil Penalty in the Circuit Court for Dorchester County, alleging that the City of Cambridge violated the effluent discharge limits in its Permit, and that wastewater periodically overflowed from certain manholes on the Water Street sewer. (*Id.* Ex. D) While the Complaint did not mention dry weather discharges specifically, it did allege "unauthorized discharges." (*Id.* Ex. D ¶ 30) The same day, MDE's enforcement action was settled by a Consent Order. (*Id.* Ex. E) The City was fined $1500 and given a timetable for hiring contractors, initiating studies, completing the studies, and implementing the study recommendations in order to cure the numerous discharge violations. (*Id.* Ex. E) The study completed pursuant to this order is referred to as the Greeley and Hansen study.(Pls.'s Opp'n Ex. B2)

Plaintiffs allege that the City has allowed dry weather discharges to occur on a monthly basis. These dry weather discharges result in manhole, sewer inlet, and CSO outfall overflows of solids, raw sewage, and other floatables, such as feces, into the streets and onto Plaintiffs' residential properties, as well as into the Choptank River. Further, the City has not reported the dry weather discharges to the EPA or the MDE as required by the Permit. (Amended Complaint ¶ 52) Plaintiffs allege that the City violates its Permit in total an average of four times per month. (*Id.* ¶ 54) This has resulted in over 480 dry weather discharge violations over the past five years (240 for unpermitted discharges and 240 for failure to notify). (*Id.* ¶ 55) [2]

The Consent Order also required the City to pay stipulated penalties for non-compliance with the Consent Order's terms, including missed deadlines. According to the Plaintiffs, MDE has not sought any penalties despite the numerous violations of the Permit and the Consent Order. (*Id.* ¶ 50)

**PROCEDURAL BACKGROUND**

Plaintiffs filed this action on May 20, 1998. Prior to filing in federal court, the Community of Cambridge and the Vestry of Christ Episcopal Church sent an intent to sue letter to the Defendants on March 2, 1998, as required by 33 U.S.C. § 1365(b) (barring suits in which a notice to sue letter has not been sent 60 days or more prior to commencement of the action). (Amended Compl. Ex. A) The letter stated that the "Community of Cambridge and the Church intend to sue on behalf of itself and its [sic] impacted members. Other interested parties may join in as plaintiffs." ( *Id.* Ex. A at 4)

Plaintiffs filed their first amended and supplemental complaint on July 9, 1998. On August 10, 1998, the City of Cambridge filed a motion to dismiss; Plaintiffs' opposition and Defendants' replies were filed in a timely manner.

---

**2.** The City disputes the Plaintiffs' contention that any substantial number of dry weather discharges have occurred.

On November 11, 1998, this court signed an order staying the proceedings, as requested by all the parties. Settlement discussions ensued, which ultimately were not successful. The City filed a renewed motion to dismiss on October 13, 1999, and a motions hearing was held on December 10, 1999.

## STATUTORY BACKGROUND

This action is brought under the citizen suit provision of the CWA. 33 U.S.C. § 1365. In 1972, Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Section 301(a) of the CWA prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless the discharge is in compliance with various enumerated sections of the Act, such as Section 402. This section prohibits discharges not authorized by, or in violation of the terms of, a NPDES permit issued pursuant to Section 402. Other provisions of the CWA require states to develop ambient water quality standards and water quality based effluent limitations, 33 U.S.C. §§ 1313, 1312, and require NPDES permittees to establish and maintain records and report the facility's discharge of pollutants on a regular basis, 33 U.S.C. § 1318.

## STANDARD OF REVIEW

The City moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming that the Plaintiffs do not meet the statutory prerequisites of the CWA and this court subsequently lacks subject matter jurisdiction. The Plaintiffs have the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir.1999). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991)). The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

The City also moves to dismiss the Plaintiffs' action pursuant to Federal Rule of Civil Procedure 12(b)(6). The Fourth Circuit recently summarized the principles governing the resolution of Rule 12(b)(6) motions:

> The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.* ... We do note, however, that for purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083,1085 (4th Cir.1979).

*Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir.1999).

## ANALYSIS

The defendant City of Cambridge filed a renewed motion to dismiss, alleging that the Plaintiffs' claims should be dismissed on several grounds. First, the City alleges that this court lacks subject matter jurisdiction, as the Plaintiffs have not met the jurisdictional requirements under the CWA. Secondly, the City argues that res judicata bars the adjudication of Plaintiffs' claims. Third, the City claims that the

Plaintiffs' allegations fail to meet the case or controversy requirement. Finally, the City argues that the abstention doctrine should be applied in this case. Because the court lacks subject matter jurisdiction, the City's motion to dismiss will be granted.

## I. Jurisdictional Requirements Under the CWA

### A. Diligent Prosecution

Section 1365(b)(1)(B) of the CWA states that no citizen suit may be commenced if the "State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B). This provision is a necessary precondition for the court's jurisdiction. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 890 F.Supp. 470, 486 (D.S.C.1995) ("Congress intended to prohibit citizen suits where the governmental enforcement agency is diligently prosecuting or has diligently prosecuted a judicial action to enforce the same alleged violations of a particular permit, standard, or limitation."); *cf. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) ("[C]itizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.'" (citations omitted)). Additionally, the CWA bars citizen suits for a violation "with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection." 33 U.S.C. § 1319(g)(6)(A)(ii).

The Plaintiffs have the burden of proving that MDE's prosecution is not diligent. *See Williams Pipe Line Co. v. Bayer Corp.,* 964 F.Supp. 1300, 1334 (S.D.Iowa 1997); *Laidlaw,* 890 F.Supp. at 486–87. "This burden is a heavy one because diligence on the part of the enforcement agency is presumed." *Laidlaw,* 890 F.Supp. at 487. *See also Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.,* 777 F.Supp. 173, 183 (D.Conn.1991) ("The court must presume the diligence of the state's prosecution of a defendant absent persuasive testimony that the state has engaged in a pattern of conduct in its prosecution that could be considered dilatory, collusive or otherwise in bad faith." (internal quotation marks omitted) (quoting *Connecticut Fund For Env't v. Contract Plating Co.,* 631 F.Supp. 1291, 1293 (D.Conn.1986))), *aff'd in part, rev'd in part,* 989 F.2d 1305 (2d Cir.1993).

Most courts considering the diligence of a state or federal prosecution have exhibited substantial deference for the agency's process. In a frequently cited statement, a district court held that a state agency "must be given great deference to proceed in a manner it considers in the best interests of all parties involved." *Arkansas Wildlife Fed'n v. ICI Americas Inc.,* 842 F.Supp. 1140, 1147 (E.D.Ark.1993), *aff'd,* 29 F.3d 376 (8th Cir.1994). *Accord Bayer,* 964 F.Supp. at 1324; *Laidlaw,* 890 F.Supp. at 487; *Connecticut Coastal,* 777 F.Supp. at 185. In *Arkansas Wildlife,* the district court held that the state agency was diligently prosecuting the violator, even though the agency granted extensions to the initial compliance schedule and levied fees well under the statutory maximum. *Arkansas Wildlife,* 842 F.Supp. at 1147–48. Similarly, the court in *Connecticut Coastal* found diligent prosecution, even though the remedy required by the state agency was more lenient than that sought by the citizens suit. *Connecticut Coastal,* 777 F.Supp. at 185.

In exploring the contours of diligence, a district court has held that it is not limited to:

order[ing] compliance with the Federal Act by a date certain, in accordance with a timetable against which compliance may be measured, and provid[ing] civil penalties for violations.... [Rather,] the statute calls for a more deferential approach that does not circumscribe the administrator's discretion to implement

a plan that, in his expert judgment, adequately addresses a violation.

*North and South Rivers Watershed Ass'n v. Town of Scituate,* 755 F.Supp. 484, 486–87 (D.Mass.), *aff'd,* 949 F.2d 552 (1st Cir. 1991). In that case, the court found that an Order requiring the Town to "take all steps necessary to plan, design, and construct facilities necessary to adequately treat and dispose of all wastewater" in accordance with local, state, and federal regulations constituted diligent prosecution. *Id.* at 487 (noting also that the state environmental agency did not assess any penalties but left open the possibility that such penalties would be assessed in the future). Additionally, the statute does not require success, but rather that an agency "try, diligently." *Supporters to Oppose Pollution Inc. v. Heritage Group,* 973 F.2d 1320, 1324 (7th Cir.1992) (rejecting plaintiff's assertions that their definition of success must be the benchmark of diligent prosecution).

The City argues that MDE's actions constitute diligent prosecution. In 1993, MDE filed a civil enforcement action against the City of Cambridge in the Circuit Court for Dorchester County under state laws comparable to the CWA. The November 24, 1993 Complaint for Injunction and Civil Penalty alleged failures to comply with the limitations imposed in the City's discharge permit, as well as other unauthorized, unlawful discharges in violation of §§ 9–322 and 9–323 of the Environmental Article of the Annotated Code of Maryland. Under the Consent Order and Judgment, also entered on November 24, 1993, the City was required to pay $1500 in fines and adhere to a time schedule for hiring contractors, completing studies, and implementing the study recommendations in order to prevent the recurring violations. Additionally, the Circuit Court for Dorchester County retained jurisdiction over the matter until implementation of the combined sewer project was complete.

Consistent with the Consent Order, the engineering firm of Greeley and Hansen completed its study in April 1995. The study concluded that separation of the storm and sanitary lines, with other adjustments, was the best approach. It recommended implementation in seven phases of approximately two years each, with final completion in 2009 at an estimated cost of $6,400,000. (Pls.' Opp'n Ex. B2 at I–8 to I–10) The City adopted the recommendations and MDE approved the plan in September 1995.

While the study called for construction of new storm sewers in the first phase of the separation process, it was later determined that construction of new sanitary sewers would be preferable. The April 1996 target date for completion of Phase I was not achieved. Concerned about the delay and the dry weather discharges, the Plaintiffs became actively involved in 1997 and filed this suit in May 1998.

On February 5, 1999, the MDE and the City entered into an Amended Consent Order and Judgment, which formalized the updated compliance schedule. The Amended Consent Order provides for substantial opportunity for comment by the Plaintiffs and other interested members of the public. (Pls.' Mot. Appoint Expert Ex. A at 9) The Circuit Court for Dorchester County has retained jurisdiction over enforcement of the Order. (*Id.* Ex. A at 15) Though the timelines established by the initial Consent Order have not been met,[3] the Amended Consent Order and Judgment has revised the deadlines, and MDE has recently approved Phase I of Cambridge's Combined Sewer Separation Project. (June 16, 2000 Letter from Lydia B. Duff, Esq., to Judge Blake)[4]

---

**3.** The City attributes much of the delay to the objections interposed by the Plaintiffs.

**4.** In response, the Plaintiffs assert that the approved plans include June 5, 2000 revisions not shown to the Plaintiffs before MDE's approval. (June 20, 2000 Letter from Timothy R. Henderson, Esq., to Judge Blake)

■ The court is persuaded by the City's argument that the threshold of diligent prosecution has been met. The MDE is doing more than the state agency in the *Scituate* case: MDE brought a judicial, rather than administrative, action; it sought and obtained a monetary penalty from the City, though minimal; it limited future connections to the sewer system; and it has required, reviewed, and approved the planning, development, and construction of a new system to eliminate wastewater problems and alleviate unauthorized discharges.

The Plaintiffs' attempts to demonstrate a lack of diligence are unpersuasive. They first contend that their suit is not barred because the MDE's prosecution did not address, in its Complaint or in the 1993 and 1999 Consent Orders, the unlawful dry weather discharges about which the Plaintiffs complain. (Pls.' Opp'n at 16 (citing *Laidlaw*, 890 F.Supp. at 486, for the proposition that a claim is barred only where the government is prosecuting a judicial action to enforce the *same* alleged violations)). The NPDES Permit, issued by MDE to the City on October 1, 1991, specifically prohibits "discharges during dry weather." (Amended Compl. ¶ 44) The State's Complaint alleges that the City violated applicable law "by allowing wastewater overflows, spills, bypasses and other unauthorized discharges." (*Id.* Ex. D at 7) The 1993 Consent Order requires the Greeley and Hansen Study to address "modification to the physical and/or operating systems as are necessary to eliminate wastewater from manholes on the Water Street sewer." (*Id.* Ex. E at 2) Additionally, the 1993 Consent Order requires the City's improvements to be designed "to alleviate discharges into any and all streets." (*Id.* Ex. E at 3) This language appears to address all sewage overflows, including dry weather discharges.

The Plaintiffs point out that the EPA Policy which defines dry weather flow was not adopted until 1994. As the City notes, however, the 1993 Consent Order itself requires the study to make recommenda-

tions for "such additional measures as may be necessary to fulfill requirements delineated by the recent United States Environmental Protection Agency CSO strategy." (Consent Order ¶ A.1.c) Additionally, the MDE directed the City to incorporate the elements of the EPA strategy into its considerations when this "policy" expanded on the earlier "strategy." (Amended Compl. Ex. F at 2)

Finally, the 1999 Amended Consent Order and Judgment specifically acknowledges the Plaintiffs' allegations and requires action intended to "prevent dry weather discharges to the street." (Pls.' Mot. Appoint Expert Ex. A at 2, 4, 5) Reporting of any "dry weather overflow from the combined sewer system" and payment of stipulated penalties for such overflows, on demand by MDE, also are required by the Order. (*Id.* Ex. A at 10–11) Accordingly, the court finds that the MDE prosecution covers the issues complained of by the Plaintiffs.

Plaintiffs also proffer the $1500 penalty as evidence of a lack of diligence in the prosecution of the environmental violations. *See Laidlaw*, 890 F.Supp. at 491 ("A lenient penalty that is far less than the maximum penalty may provide evidence of non-diligent prosecution."). While noting that the state agency only assessed a fine of $100,000 out of a possible $2,270,000, the *Laidlaw* court seemed most concerned with the state agency's failure to consider the economic benefit the defendant received by not complying with its permit. *Id.*

In the present case, there is no dispute that the assessed fine of $1500 was far less than the potential $10,000 per day, per violation fine available in Maryland in 1993. The economic benefit analysis of *Laidlaw*, however, has limited relevance when applied to a municipality such as the City of Cambridge, rather than a private for-profit business enterprise. Moreover, the relevant analysis is not simply the size of the penalty imposed, but also whether the state is authorized to assess penalties

comparable to the federal act. *See Scituate*, 949 F.2d at 556 (rejecting plaintiff's argument that the failure to impose a penalty automatically permits a citizens' suit and instead measuring the diligence of the prosecution by the ability of the agency to impose fines "comparable to the Federal Act"). MDE's discretionary decision not to impose significant monetary penalties on the City does not support a finding of lack of diligence. The City is bearing other substantial costs of the sewer and storm drain project, and MDE has reserved the right to assess penalties in the future if necessary.

The Plaintiffs also allege that MDE's failure to enforce the compliance timetable outlined in the 1993 Consent Order demonstrates a lack of diligent prosecution. *See Culbertson v. Coats American, Inc.*, 913 F.Supp. 1572, 1579 (N.D.Ga.1995) (characterizing the state administrative agency's actions as mere extensions of deadlines rather than a diligent prosecution because the defendant was not required to meet the effluent levels in the NPDES permit; accordingly, the citizens' suit was not barred); *Public Interest Research Group v. Rice*, 774 F.Supp. 317, 327 (D.N.J.1991) (holding that no diligent prosecution had occurred because the EPA agreed to delay compliance with the effluent levels, rather than "enforce" them).

As the First Circuit explained in *Scituate*, however, "violations may continue despite everything reasonably possible done by the State and Appellee to correct them." *Scituate*, 949 F.2d at 558. The City points out that the time frame permitted by the MDE "is not inconsistent with standard processes for complex environmental projects, which necessitate preparation of a series of documents, starting with investigative, analytic studies and proceeding thorough design and plan stages. Each of these documents is subjected to thorough government agency and public review processes." (Defs.' Reply at 8)

■ The court finds that the MDE is engaged in a diligent prosecution of the City for its failure to comply with the limitations imposed in the City's discharge permit, as well as other unauthorized, unlawful discharges in violation of §§ 9–322 and 9–323 of the Environmental Article of the Annotated Code of Maryland. Accordingly, under 33 U.S.C. § 1365(b)(1)(B), the citizens' suit brought by the Plaintiffs is barred; this court lacks subject matter jurisdiction.[5]

**B. Prior Notice by Individual Plaintiffs**

Further grounds exist on which to grant the City's motion with regard to the individual Plaintiffs. Under the CWA, individuals may sue as private attorneys general to enforce the requirements of the Act. This right, however, is contingent upon the

---

5. The City's argument that the Plaintiffs' have not met the threshold language of the CWA citizen suit statute because the City is not currently in violation of "any effluent standard or limitation or of any order issued by the Administrator of EPA or by the State of Maryland," 33 U.S.C. § 1365 is without merit. The City cites both *Gwaltney*, 484 U.S. at 57, 108 S.Ct. 376, and *Sierra Club v. Simkins Industries, Inc.*, 847 F.2d 1109, 1114 (4th Cir.1988), for the proposition that a defendant in a CWA citizen suit must be in actual violation of the CWA to confer jurisdiction. (Defs.' Mem. Supp. Mot. Dismiss at 17–18)

As the Plaintiffs point out, however, the City overstates this jurisdictional requirement. While the *Gwaltney* Court did hold that wholly past violations of the CWA were not sufficient to confer jurisdiction, jurisdiction does exist when a plaintiff makes a good faith allegation of continuous or intermittent violations. *Gwaltney*, 484 U.S. at 64, 108 S.Ct. 376. The Court also clarified that the plaintiff must merely allege, not prove, the violations at the pleading stage. *Id.* at 66, 108 S.Ct. 376. *See also Sierra Club*, 847 F.2d at 1114 (recognizing the distinction made in *Gwaltney* between wholly past violations and allegations of continuous or intermittent violations).

The Plaintiffs meet the *Gwaltney* threshold by their allegations regarding the continuous and recurring dry and wet weather discharges, the City's failure to report the discharges, and the continued violations of the terms of the 1993 Consent Order and the terms of the permit. (Pls.' Opp'n at 15; Amended Compl. ¶¶ 45, 49, 50, 52, 53, & 55)

plaintiff's fulfillment of notice requirements. Section 1365(b) provides that:

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the alleged violations (I) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order. . . .

33 U.S.C. § 1365(b). At issue in this case is whether the individual plaintiffs provided sufficient notice to the City.

Both the Supreme Court and the Fourth Circuit have strictly interpreted this 60-day prior notice requirement. In *Hallstrom v. Tillamook County*, the Supreme Court held that the notice requirement constitutes a "specific limitation on a citizens's right to bring suit." *Hallstrom v. Tillamook County*, 493 U.S. 20, 26, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). In explaining its strict interpretation of the requirement, the Court emphasized the two underlying congressional goals for the notice procedure:

The legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizens suits. . . . Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways. First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. . . . Second, notice gives the alleged violator an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.

*Id.* at 29, 110 S.Ct. 304 (citations omitted).[6] *See also National Envtl. Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1099 (11th Cir. 1991) (Powell, J., sitting by designation) (recognizing that "another purpose behind the notice requirement of § 1365 is to effectuate Congress's preference that the Act be enforced by governmental prosecution" (citing *Gwaltney*, 484 U.S. at 60, 108 S.Ct. 376)).

Following *Hallstrom*, the Fourth Circuit spoke about the importance of adequate notice, stating that "[c]itizen suit notice requirements are 'mandatory conditions precedent to commencing suit' and may not be avoided by employing a 'flexible or pragmatic' construction." *Monongahela Power Co. v. Reilly*, 980 F.2d 272, 275 n. 2 (4th Cir.1993) (quoting *Hallstrom*, 493 U.S. at 26, 31, 110 S.Ct. 304). Other Circuits are in agreement with that approach. *See New Mexico Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 833 (10th Cir.1996) (holding that a party who had failed to give 60-day prior notice of a citizen suit was not a proper party to an action, even though the co-plaintiffs has provided adequate notice); *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1352, 1354 (9th Cir.1995) (dismissing a citizens suit because the plaintiffs failed to provide adequate pre-suit notice). In *Washington Trout*, one organization sent the 60-day prior notice letter, indicating that it, "among perhaps others," intended to file suit against the defendant. *Id.* at 1352. The organization that sent the letter left the suit four months after it had been filed, and the two remaining plaintiffs had not been specifically named in the pre-suit notice. Stating that the notice therefore failed to allow the parties time to resolve their conflicts, the Ninth Circuit upheld the trial court's dismissal of the action for lack of subject matter jurisdiction. *Id.* at 1354–55. *But*

**6.** Although *Hallstrom* involved a suit brought under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, the Supreme Court has recognized that the CWA citizen suit provision follows the same model as the RCRA. *See Hallstrom*, 493 U.S. at 23, 110 S.Ct. 304; *ABC Rail Corp.*, 926 F.2d at 1097 (applying *Hallstrom* analysis to CWA citizen suit).

*see Environmental Defense Fund v. Tidwell,* 837 F.Supp. 1344, 1352 (E.D.N.C. 1992) (allowing notice by one defendant to satisfy the notice requirement for all defendants when the defendant who gave notice was still involved in the case).[7]

■ The City alleges that the individual plaintiffs' notice here suffers from the same flaw. The March 2, 1998 notice letter was sent on behalf of the Community of Cambridge Environmental Health and Community Development Group and the Vestry of Christ Episcopal Church. (Amended Compl. Ex. A at 1) The letter stated that the "Community of Cambridge and the Church intend to sue on behalf of itself and its [sic] impacted members. Other interested parties may join in as plaintiffs." *Id.* at 4. This language is analogous to that in *Washington Trout.* As to the individual plaintiffs, it is not sufficient to comply with the statutory notice requirement.

The Plaintiffs' attempts to question the sincerity of the City's willingness to negotiate with the individual Plaintiffs, had they been named in the notice letter, and to charge the City with actual knowledge of the individual plaintiffs' identities, are immaterial in light of the Fourth Circuit's strict interpretation of the notice requirement. *See Monongahela Power Co.,* 980 F.2d at 275 n. 2.[8] Accordingly, the City's motion to dismiss the individual plaintiffs for lack of subject matter jurisdiction will be granted.

7. The *Tidwell* opinion was issued prior to the Fourth Circuit's ruling in *Monongahela.*

8. The City also alleges that the Plaintiffs' Amended Complaint should be dismissed because the notice letter of March 2, 1998 failed to identify the dates, times, places, and nature of alleged violations as required by the relevant statute and regulations. *See, e.g.,* 40 C.F.R. § 135.3(a).

There is support for the Plaintiffs' contention that the level of specificity required is not as stringent as the City suggests. *See, e.g., Public Interest Research Group v. Hercules, Inc.,* 50 F.3d 1239, 1247–48 (3d Cir.1995)(requiring the plaintiff to provide enough information for the defendant to

## C. Plaintiffs' Claims for Repairs to Real Property

■ Even if the court were to allow this action to proceed, the Plaintiffs' request for compensation and remediation of damage to property would have to be dismissed, as such relief is unavailable. In the Amended Complaint, Plaintiffs request an order that the City of Cambridge "perform any and all work necessary for the restoration of any real property affected by the unlawful discharges of pollutants in violation of the Act and the Permit by the City of Cambridge." (Amended Compl. at 24) Under the CWA, district courts have jurisdiction "to enforce ... an effluent standard or limitation, or such an order, or to order the Administrator to perform such an act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title." 33 U.S.C. § 1365(a). The statute, however, does not create jurisdiction to grant any other remedy to a citizen plaintiff. *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 18, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)("[P]rivate remedies in addition to those expressly provided should not be implied."). Nor have the Plaintiffs cited any case authorizing such relief.

## II. Res Judicata, Standing, and Abstention

■ The City alleges that the Plaintiffs' claims are barred by res judicata. The

identify the alleged violation, but rejecting as too burdensome the suggestion that the specifics of each alleged violation be included in the 60 day prior notice letter); *Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.,* 652 F.Supp. 620, 628 (D.Md.1987) (refusing to dismiss claims not included in the 60 day prior notice letter when the defendants had actual knowledge of the alleged violations). The Plaintiffs argue that the March 2, 1998 notice letter provided sufficient information, in that it alleged the dry weather discharges occurred at "including, but not limited to, every spring and wind induced tide." (Pls.' Opp'n at 24)

In light of the decision to dismiss the case, however, this issue need not be resolved.

essential elements of res judicata are a final judgment on the merits in an earlier suit; identity of the cause of action in both the earlier and the later suit; and identity of the parties or their privies in the two suits. *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir.1981). Both parties agree that the consent order issued in 1993 by the Dorchester County Circuit Court constitutes a final judgment on the merits. *See id.* at 487 (noting that "a consent judgment 'is as conclusive and final as to any matter determined as one rendered in invitum after contest and trial'" (quoting *Rector v. Suncrest Lumber Co.*, 52 F.2d 946, 948 (4th Cir.1931))).

Dispute exists, however, regarding the remaining prongs. The City alleges that both the State Complaint and the Consent Orders address the same causes of action that the Plaintiffs assert in the federal complaint, and that the interests of the Plaintiffs, as private attorneys general, are identical to those of the State. The Plaintiffs disagree. Recognizing that the applicability of res judicata to an ongoing environmental prosecution presents complex questions, and because the complaint will be dismissed on other grounds, the court declines to decide the issue.

The City's final two arguments in favor of dismissal have no merit but will be considered briefly.

The City argues that the Plaintiffs lack standing and that their case is moot because they have no redressable injury. This argument fails for two reasons. First, the Plaintiffs have alleged continuing violations of the CWA; injunctive relief would therefore be available to them. Secondly, even if a civil penalty were the only available remedy, the Supreme Court recently reversed the Fourth Circuit's holding that such a situation moots the action. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 120 S.Ct. 693, 700, 145 L.Ed.2d 610 (2000), *rev'g*, 149 F.3d 303 (4th Cir.1998).

■ The City also argues that the court should abstain from exercising jurisdiction over this case pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The *Burford* abstention doctrine bars federal judicial interference with complex state regulatory schemes where "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy in respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

While the City cites numerous cases from this Circuit and District in which courts have abstained under *Burford*, none of them involved citizens' suits brought under the CWA or a similar federal statute. *See Front Royal & Warren County Indus. Park Corp. v. Front Royal*, 945 F.2d 760, 764 (4th Cir.1991) (abstaining from landowners' civil rights actions challenging town's failure to extend sewer service to their parcels of land following annexation); *Browning–Ferris, Inc. v. Baltimore County*, 774 F.2d 77, 79 (4th Cir.1985)(abstaining from resolution of constitutional challenge to denial by state and county of permits necessary to operate sanitary landfill); *Ad + Soil Services, Inc. v. Board of County Commissioners*, 596 F.Supp. 1139, 1143 (D.Md.1984) (finding the application of the *Burford* doctrine appropriate in a case involving the constitutionality of changes to zoning ordinances and the issuance of a zoning permit).

■ The court is persuaded by those cases from other districts finding that the *Burford* abstention doctrine is not applicable to citizen suits brought under the CWA. *See Long Island Soundkeeper Fund, Inc. v. New York City Dept. of Envtl. Protection*, 27 F.Supp.2d 380, 385 (E.D.N.Y.1998) (refusing to dismiss plaintiff's CWA claim under the abstention doctrine and commenting that to dismiss the plaintiff's claims would "essentially deprive them of the statutory right that Congress saw fit to confer upon them"); *Culbertson*, 913 F.Supp. at 1578 (holding that the CWA's citizen suit provision is meant to

supplement state government actions and therefore the *Burford* doctrine is inapplicable); *United States v. Cargill, Inc.,* 508 F.Supp. 734, 745 (D.Del.1981) (holding that Congress explicitly contemplated concurrent jurisdiction between state and federal courts in citizen suits enforcing environmental regulations). *Burford* abstention would not be appropriate if the Plaintiffs' claims against the City were otherwise allowed to proceed under the CWA.

For the reasons stated above, the Defendants' motion to dismiss will be granted by separate Order.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **OR-DERED** that:

1.  The City's Renewed Motion to Dismiss is **GRANTED**;

2.  This case is **CLOSED**; and

3.  Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.