ASSATEAGUE COASTKEEPER et al.

v.

ALAN AND KRISTIN HUDSON
FARM et al.

Civil Action No. WMN–10–cv–0487.

United States District Court,
D. Maryland.

July 21, 2010.

Jane F. Barrett, Christine M. Meyers, University of Maryland Environmental Law Clinic, Baltimore, MD, Chris Nidel, Nidel Law PLLC, Washington, DC, for Assateague Coastkeeper, Assateague Coastal Trust, Kathy Phillips, Waterkeeper Alliance, Inc.

Liane Curtis, Waterkeeper Alliance, Irvington, NY, pro hac, vice.

Michael Schatzow, Venable LLP, Baltimore, MD, for Alan & Kristin Hudson Farm, Perdue Farms Inc.

George Faulkner Ritchie, IV, Gordon Feinblatt Rothman Hoffberger & Hollander LLC, Venable LLP, Baltimore, MD, for Alan & Kristin Hudson Farm.

### MEMORANDUM

WILLIAM M. NICKERSON, Senior District Judge.

Before the Court are Defendants Alan and Kristin Hudson Farm's and Perdue Farms Incorporated's Motions to Dismiss. Papers 14 and 15. The motions have been fully briefed. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that both Motions to Dismiss will be denied in part and granted in part.

### I. BACKGROUND

This case is a citizen suit for penalties and injunctive relief brought by the Assateague Coastkeeper, the Assateague Coastal Trust, Kathy Phillips, and the Waterkeeper Alliance, Inc. (collectively "Plaintiffs") under the citizen suit provisions of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, against the Alan and Kristin Hudson Farm (Hudsons or Hudson Farm) and Perdue Farms Incorporated (Perdue) (collectively "Defendants"). The case relates to alleged illegal discharges of poultry manure from the Hudson Farm chicken operation to a field ditch that empties into the Franklin Branch of the Pocomoke River. Perdue is an "integrator" that contracts with the Hudsons to raise Perdue's chickens.

Between October and December 2009, Plaintiffs allege that Phillips sampled water in a ditch flowing from the Hudson farm on five separate occasions. On each date, sample analysis documented that the water contained pollutants, including fecal coliform, *E. coli,* nitrogen, phosphorus, and ammonia. According to Plaintiffs, additional investigation revealed stockpiles of what was believed to be uncovered poultry manure next to a drainage ditch in the Hudson Farm's production area, which could be a source of the pollutants discharging from the site. Based upon Phillips' investigation, Plaintiffs sent a Notice Letter on December 17, 2009, to Defendants Hudson Farm and Perdue, alerting them to the discharges. Following the Notice Letter, Plaintiffs claim that Phillips sampled the water several more times between December 2009 and February 2010, each time showing high levels of fecal coliform, *E. coli,* nitrogen, phosphorus, and ammonia allegedly from Hudson Farm.

Plaintiffs filed this action on March 1, 2010, alleging that Defendants violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a), which prohibits the discharge of pollutants from a point source into navigable waters of the United States, unless pursuant to the terms of a National Pollution Discharge Elimination System (NPDES) permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Alternatively, if Defendants are deemed to be covered by the Maryland permit for Centralized Animal Feeding Operations, Plaintiffs claim that Defendants are in violation of a zero discharge permit. NPDES Permit No. MDG01 Part B.2.

Defendants filed their motions to dismiss on March 29, 2010, arguing that Plaintiffs' Complaint must be dismissed pursuant to Rule 12(b)(1) and (6) of the Federal Rules for Civil Procedure [1] because Plaintiffs have failed to satisfy the notice provisions for citizen suits brought under the federal CWA, Perdue cannot be held liable solely as an integrator, Plaintiffs have failed to prove an ongoing violation, and Plaintiffs have failed to state a claim upon which relief may be granted.[2]

## II. THE REGULATORY AND PERMITTING SCHEME

When Congress first passed the CWA in 1972, it articulated a goal of restoring and maintaining the chemical, physical, and biological integrity of the nation's waters. 33 U.S.C. § 1251. To achieve this goal, the CWA prohibits the discharge of pollutants from a "point source" to "waters of the United States," except as authorized by a permit issued under the National Pollution Discharge Elimination System (NPDES) program. 33 U.S.C. §§ 1311, 1342, 1362. The U.S. Environmental Protection Agency (EPA) administers the NPDES program, although the CWA provides for delegation of authority to the states. 33 U.S.C. §§ 1251(d), 1342(a)(5); 40 C.F.R. § 123.25(a). Accordingly, Maryland administers the federal NPDES program and issues federal discharge permits in the State. *See Howard County v. Davidsonville Area Civic and Potomac River Ass'ns, Inc.,* 72 Md.App. 19, 527 A.2d 772, 774 n. 3 (Md.1987). A delegated state must implement all aspects of the NPDES program, including issuing per-

---

**1.** Defendant Hudson Farm incorporated by reference the arguments in Defendant Perdue's motion.

**2.** Defendants' motions also raised the issue that Plaintiffs did not have standing. Perdue's Mot. 24–33. They concede in their re-

ply brief, however, that affidavits provided by Plaintiffs in their opposition brief "appear to cure their defective pleading regarding standing," but Defendants reserved the right "to raise the issue after discovery." Perdue's Reply 19 n. 12.

mits that conform to federal standards. 33 U.S.C. § 1342(b)(1)(A).

The regulations implementing the NPDES program define "animal feeding operations" (AFOs) that meet certain criteria as "concentrated animal feeding operations" (CAFOs), which are point sources under the CWA. 33 U.S.C. § 1362(14); 40 C.F.R. § 122.23. CAFOs are designated as point sources because of Congress' recognition of the increasing amounts of waste generated by these intensive livestock production facilities.

> Animal and poultry waste, until recent years, has not been considered a major pollutant .... The picture has dramatically changed, however, as development of intensive livestock and poultry production on feedlots and in modern buildings has created massive concentrations of manure in small areas. The recycling capacity of the soil and plant cover has been surpassed.... Precipitation runoff from these areas picks up high concentrations of pollutants which reduce oxygen levels in receiving streams and lakes and accelerate the eutrophication process.... [W]aste management systems are required to prevent waste generated in concentrated production areas from causing serious harm to surface and ground waters.

Statement of Senator Robert Dole, S.Rep. No. 92–414, at 100 (1972), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3761.

The Regulations prohibit any discharge of manure, litter, or process wastewater from the production area of a CAFO into waters of the United States. 40 C.F.R. § 412.43(a)(1). The only exception to this zero discharge standard occurs when there is a discharge as a result of a 25 year, 24 hour rainfall event. *Id.;* 40 C.F.R. § 412.2(i). CAFOs that discharge or propose to discharge to surface waters are required to obtain an NPDES permit. 40 C.F.R. § 122.23(d)(1). Pursuant to its del-

egated authority, the Maryland Department of the Environment (MDE) issued a General Discharge Permit for Animal Feeding Operations that became effective on December 9, 2009, consistent with federal regulations with respect to CAFOs. Maryland Permit No. 09AF, NPDES Permit No. MDG01 (General Permit or GP). Citizens may file suit against any person alleged to be in violation of an effluent standard or limitation under the CWA, which includes violations of discharging without a permit and discharging in violation of a permit. 33 U.S.C. § 1365(a)(1) and (f).

### III. LEGAL STANDARD

Where subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion to show that jurisdiction exists. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). Where a challenge is made, not to the sufficiency of the jurisdictional allegations, but to the underlying facts supporting those allegations, "[a] trial court may [ ] go beyond the allegations of the complaint" and "may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id.* In considering that evidence, the Court may resolve factual disputes to determine the proper disposition of the motion. *Id.*

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, ..., to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129

S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563, 127 S.Ct. 1955. In considering such a motion, the court is required to accept as true all well-pled allegations in the complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997) (citing *Little v. Federal Bureau of Investigation,* 1 F.3d 255, 256 (4th Cir. 1993)).

## IV. DISCUSSION

### A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction: Plaintiffs' Notice of Intention to File Suit

■ Citizen plaintiffs must provide a notice of intent to sue to the alleged violator, to the U.S. Environmental Protection Agency (EPA), and to the relevant state enforcement agency at least 60 days prior to actually filing suit. 33 U.S.C. § 1365(b)(1)(A). Notice in citizen suits is a "mandatory, not optional, condition precedent" to filing suit. *Hallstrom v. Tillamook County,* 493 U.S. 20, 26, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). Without adequate notice, the Court does not have subject matter jurisdiction to hear the case. *Community of Cambridge Environmental Health and Community Development Group v. City of Cambridge,* 115 F.Supp.2d 550, 558–59 (D.Md.2000). Notice must be "given in such manner as the [EPA] Administrator shall prescribe by regulation." 33 U.S.C. § 1365(b). Ac-

cording to the Supreme Court in *Hallstrom,* the Notice provision is intended to strike a balance between encouraging citizen enforcement and avoiding the burden on federal courts from excessive numbers of citizen suits. *Id.* at 29, 110 S.Ct. 304. Requiring compliance with the Notice provision serves this congressional goal by allowing Government agencies the opportunity to take responsibility to enforce the environmental regulations and by giving the alleged violator an opportunity to correct the violation, rendering a citizen suit unnecessary. *Id.*

EPA regulations require that notice "shall include sufficient information to permit the recipient to identify"

1) the specific standard, limitation, or order alleged to have been violated,

2) the activity alleged to constitute a violation,

3) the person or persons responsible for the alleged violation,

4) the location of the alleged violation,

5) the date or dates of such violation, and

6) the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). Defendants argue that there are several deficiencies in Plaintiffs' Notice that deprive this Court of jurisdiction. In particular they contend that the Notice 1) fails to properly identify plaintiffs; 2) fails to provide notice of the violations alleged in the Complaint; 3) fails to allege violations of the CWA with sufficient specificity; 4) fails to identify dates of violations. The last three issues will be addressed together.

### 1. Sufficiency Of The Notice As To The Identification of Plaintiffs

■ Defendants contend that the Notice fails to adequately identify Plaintiffs Assateague Coastkeeper, Kathy Phillips, and

Assateague Coastal Trust and that the suit must be dismissed as to those Plaintiffs. Plaintiffs concede that they failed to identify Assateague Coastal Trust (ACT) in the Notice Letter, which renders the Notice Letter deficient as to ACT. Citing to *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993), they contend, however, that the Court is not under obligation to dismiss ACT from the suit because, if one of the plaintiffs have standing, the court need not decide the standing of the others.

The question here is not one of standing, however, but of notice. The Supreme Court and the Fourth Circuit have stated that the 60 day notice provision is to be strictly followed. *Hallstrom*, 493 U.S. at 26, 110 S.Ct. 304; *Monongahela Power v. Reilly*, 980 F.2d 272, 275 n. 2 (4th Cir. 1992). In light of *Monongahela Power* and following the Ninth Circuit's decision in *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351 (9th Cir.1995), this Court in *Community of Cambridge* held that language in a notice letter stating "other interested parties may join in as plaintiffs" was not sufficient to comply with the statutory notice requirements as to individual plaintiffs not specifically named in the notice letter. 115 F.Supp.2d at 559. Although in *Washington Trout* the Ninth Circuit dismissed the unnamed plaintiffs only after the named plaintiffs had left the suit, this Court extended that holding to dismiss unnamed plaintiffs regardless of whether notice was sufficient as to other plaintiffs. *Id.* at 558–59. Thus, here, the Court must dismiss Assateague Coastal Trust from the action.

It is a closer question whether Assateague Coastkeeper and Kathy Phillips must be dismissed as Plaintiffs. Although they are identified in the Notice, their addresses and phone numbers were not included. The Court agrees with Plaintiffs that Defendants likely could have obtained their contact information from Waterkeep-

er Alliance, but in light of *Monongahela Power* and *Community of Cambridge's* mandate to strictly adhere to the notice requirements and because the EPA regulations as to notice require that a Plaintiff's address and phone number be included in the Notice letter, the Court must find that the Notice here is not sufficient as to Ms. Phillips or Assateague Coastkeeper and they will be dismissed as Plaintiffs.

### 2. Sufficiency Of The Notice As To The Facts And Laws Violated

Defendants argue that the Notice Letter sent by Plaintiffs regarding CWA violations at Hudson Farms alleged only a violation in relation to an uncovered stockpile of poultry manure next to a drainage ditch, but that their Complaint makes a broader allegation of discharge of pollutants from unspecified locations at the Hudson Farm CAFO. They contend that the Notice provision does not allow Plaintiffs to expand their claim in this fashion, but, rather, Plaintiffs had to provide notice of the violations about which they would actually sue. Moreover, they contend that "actual" or "constructive" notice of the expanded claim is not sufficient, because the notice provisions require strict compliance.

■ The Court does not agree that Plaintiffs' Notice is to be read as narrowly as Defendants argue. "Although the notice must be sufficiently adequate so that the recipients can identify the basis for the complaint, 'the citizen is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation.'" *Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir.2002) (citing *Public Interest Research Group v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3rd Cir.1995)). The Court in *Hercules* took an " 'overall sufficiency' approach[, which] fo-

cused on the purpose of the notice requirement 'to provide the recipient with effective, as well as timely notice.' " *Id.* (citing *Hercules,* 50 F.3d at 1248 and *Atl. States Legal Found. Inc. v. Stroh Die Casting Co.,* 116 F.3d 814, 819 (7th Cir.1997)). "The key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance." *Id.* Thus, "[t]he key to notice is to give the accused company the opportunity to correct the problem." *Atl. States,* 116 F.3d at 820. "In short, the Clean Water Act's notice provisions and their enforcing regulations require no more than 'reasonable specificity.' " *San Francisco BayKeeper, Inc. v. Tosco Corp.,* 309 F.3d 1153, 1157–59 (9th Cir.2002) (quoting *Catskill Mtns. Chapter of Trout Unlimited, Inc. v. New York,* 273 F.3d 481, 488 (2d Cir.2001)).

■ Defendants' primary argument relates to the location of the violation identified in Plaintiffs' Notice Letter. As Plaintiffs are alleging a point-source discharge violation, their notice letter must have identified a point source. *Karr v. Hefner,* 475 F.3d 1192, 1203 (10th Cir.2007). "Point Source" is defined as 'any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, [or] *concentrated animal feeding operation* . . . from which pollutants are or may be discharged.' 33 U.S.C. § 1362(14). Here, Plaintiffs' Notice identified the point source as the Hudson Farm, which Defendants do not dispute is a concentrated animal feeding operation (CAFO) under the CWA. Thus, no further description of the location of the violation in the Notice is necessary.

■ Defendants make much of the fact that the Notice Letter refers to an uncovered poultry manure pile in the Hudson Farm CAFO production area and argues

that the Complaint should, therefore, be restricted to that more specific source. While Plaintiffs' Notice refers to the manure pile as a possible source, it was only "upon information and belief" because Plaintiffs' were not able to go onto the Hudson Farm and investigate the source themselves. As such, they speculated as to the specific source location within the CAFO. Once Defendants were on notice that the Hudson Farm CAFO was allegedly discharging pollutants in the form of poultry manure into a water source, they, not Plaintiffs, had the information to determine from where specifically within the CAFO the discharge may have been coming and to correct the problem.

That the Notice was not specifically targeted only at the manure pile, but more generally at the CAFO, is evidenced by events and actions taken by the Maryland Department of the Environment (MDE) following receipt of the notice. In investigating the allegations contained in Plaintiffs' Notice Letter, the MDE conducted a site assessment of the Hudson Farm CAFO that focused not only on the pile of waste, but on the entire CAFO point source. They took water samples from ditches that flow past the waste piles and the chicken houses, took photos from around the farm, including several piles of waste, standing water, trenches, and buildings, took a soil sample, and installed piezometers in areas around the Hudson Farm. Perdue Mot. Ex. C. These tests showed that the pollutants of which Plaintiffs provided Notice were in the ditches surrounding the Hudson Farm CAFO. Pl.s Opp. Ex. C. Thus, Plaintiffs' Notice provided "sufficient information to permit the recipient to identify the . . . location of the violation" as the Hudson Farm CAFO.

Defendants argue that the actions MDE and Defendants took following the notice may show that they had "actual" or "con-

structive" notice of a broader potential violation as a result of Plaintiffs' letter, but "actual notice" is not sufficient to provide this Court with jurisdiction and cite to this Court's decision in *Community of Cambridge* for support. Defendants' argument expands the holding of *Community of Cambridge*, however. As already discussed, the holding in *Community of Cambridge* applied only to the requirement to identify all individual plaintiffs in the notice letter. It did not discuss whether, assuming all of the notice requirements had been met, actual notice was sufficient to allow additional allegations stemming from the noticed violation to be included in the complaint. Moreover, *Community of Cambridge* lends support to the argument that actual or constructive knowledge may be used to prove that adequate notice was given. The Court noted in *dicta* that "[t]here is support for the Plaintiffs' contention that the level of specificity required in identifying the dates, times, places, and nature of alleged violations is not as stringent as the City suggests." *Id.* at 559 n. 8. This Court, in *Chesapeake Bay Foundation v. Bethlehem Steel Corp.*, ruled that actual notice of a violation is sufficient as long as the notice requirements are met. 608 F.Supp. 440, 450 (D.Md.1985) (*Chesapeake Bay I*); *Chesapeake Bay Foundation v. Bethlehem Steel Corp.* 652 F.Supp. 620, 628 (D.Md.1987) (*Chesapeake Bay II*). In *Chesapeake Bay I* and *II*, the Court twice refused to dismiss claims not included in the 60 day prior notice letter when the defendants had actual knowledge of the alleged violations. *Chesapeake Bay I*, 608 F.Supp. at 450–51; *Chesapeake Bay II*, 652 F.Supp. at 628.

This holding as to actual notice is held by the majority of Circuits that have looked at the issue. *Henry Bosma Dairy*, 305 F.3d at 952 (holding that where additional violations listed in the complaint originated from the same source, the CAFO dairies, deposited the same waste material, manure, into clearly identifiable navigable waters of the U.S., a single drain ditch, that they constituted a single violation that repeated over a span of time and met the CWA notice requirements); *Atl. States Legal Foundation*, 116 F.3d at 820 (holding that where "the alleged polluter, upon receiving notice about one offending outfall, simply redirected the stream of contaminated water to another outfall" the polluter clearly received enough information to correct the problem and to satisfy the purposes of the statutory notice provisions of the CWA); *Hercules*, 50 F.3d at 1248 ("We find that notice of one facet of an effluent infraction is sufficient to permit the recipient of the notice to identify other violations arising from the same episode.").

The cases cited by Defendants are inapposite because, unlike here, in each case the plaintiffs failed to allege each of the notice requirements and actual notice could not be a substitute for strictly complying with the requirements. *Hallstrom*, 493 U.S. at 26, 31, 110 S.Ct. 304 (holding that citizen plaintiffs must strictly comply with the 60 day notice period, but the Court did not discuss what the notice must contain); *National Parks and Conservation Assn. v. TVA*, 502 F.3d 1316, 1330 (11th Cir.2007) (holding that the defendant's participation in an earlier EPA enforcement action relating to similar allegations did not substitute for the lack of specificity in the notice as to pollutants and when the violations occurred); *Karr*, 475 F.3d at 1203–06 (holding that the plaintiff provided no evidence that its very broadly written notice letter, which failed to identify pollutants discharged, the river into which the pollutants were released, and a point source as defined by the regulations, had resulted in remedial action on the part of defendant and that the court did not believe that the letter, as written, could reasonably be expected to result in

appropriate action within 60 days and did not, therefore, provide sufficient notice); *Stephens v. Koch Foods, LLC,* 667 F.Supp.2d 768, 788 (E.D.Tenn.2009) (holding that where the notice letter alleged a discharge from one point source, a particular pump station, that it did not provide sufficient notice of discharges from a different pump station).

Unlike in the cases cited by Defendants, Plaintiffs here have met each of the regulatory notice requirements despite Defendants' contentions to the contrary. Actual notice is not being used to substitute for the provision of notice, but the actions of Defendants and MDE following receipt of Plaintiffs' notice letter serve to demonstrate that the notice provided sufficient information to permit Defendants to identify and correct the violation. The Notice Letter specifies an intent to sue Defendants for discharges of pollutants associated with poultry waste from the Hudson Farm CAFO into the Pocomoke River, in violation of the CWA. It specifies the discharged, poultry waste, and more specifically fecal coliform, E. coli, phosphorus, nitrogen, arsenic, and ammonia. It specifies the dates of the discharges—during and after each rain event on October 30th, November 11th, 12th, 16th, and December 9th, 2009. It also provides a detailed description of which provisions of the CWA Plaintiffs allege Defendants violated or, in the alternative, that Defendants violated a zero charge permit and specified the source of that allegation. In particular, the Notice letter specifies that Defendants violated 33 U.S.C. § 1311(a) and 33 U.S.C. § 1342 of the CWA and cites to statutory and regulatory definitions to explain specifically how Defendants violated those provisions. It also explains that should it be determined that Defendants are covered by the Maryland CAFO permit, that Defendants had violated Part B.2 of NPDES Permit No. MDG01. Thus, the letter put the Defendants on sufficient notice that Plaintiffs were alleging that the Hudson Farm CAFO was discharging pollutants associated with poultry waste into the Pocomoke River.

In the only relevant case cited by Defendants, *ONRC Action v. Columbia Plywood, Inc.,* the Ninth Circuit found that where the notice provided to the defendant specified only one theory on which the defendant's NPDES permit was invalid, but brought suit on two additional grounds, that sufficient notice had not been provided as to those two additional causes of action. 286 F.3d 1137, 1142–1144 (9th Cir.2002). The court found that, by specifically identifying only one problem with the permit, the defendant was not required to speculate as to other possible reasons that its permit may not be valid. Moreover, the court found that, if the plaintiff had identified its other theories in the notice, Oregon and the EPA may have decided those additional theories, unlike the one identified in the notice, were sufficient to call for agency action.

Although not binding on the Court, this case is nonetheless distinguishable from the case at bar. Here Defendants alone, not Plaintiffs, were able to determine whether or not the referenced pile was the source of the alleged pollutants. In being alerted to allegations of discharges of pollutants, Defendants were on notice to stop those discharges whether they came from the referenced manure pile or from some other source within the CAFO. Moreover, the notice of the discharges led MDE to investigate not only the supposed manure pile, but the Hudson Farm poultry CAFO generally. Thus, unlike in *ONRC,* both Defendants and the Government were sufficiently put on notice of the alleged illegal discharges from the poultry CAFO, of which one possible cause was the referenced manure pile. The Notice did not limit, however, the need to investigate oth-

er possible causes if it was determined that the pile was not the cause. Because the Notice met all of the statutory and regulatory requirements and sufficiently put Defendants on notice of the potential violations of the CWA such that they could attempt to correct them, Defendants' motion to dismiss will be denied as to this ground.

## B. Rule 12(b)(6): Failure To State A Claim

### 1. Perdue As a Defendant

■ Defendant Perdue argues that, as a matter of law, it cannot be a Defendant in this case because it is a poultry integrator and not required to obtain a NPDES CAFO discharge permit. Although, it contends that this argument is to be analyzed under Rule 12(b)(1) for lack of subject matter jurisdiction, it provides no legal support for this basis. Oddly, Perdue does, however, provide legal basis for its analysis under Rule 12(b)(6) for failure to state a claim and the Court proceeds on that basis.

Section 301(a) of the CWA states that "the discharge of any pollutant by *any person* shall be unlawful." 33 U.S.C. § 1311(a) (emphasis added). The statute clearly makes violations by "any person" unlawful, not solely permit-holders. Cf. *U.S. v. Smithfield Foods, Inc.*, 965 F.Supp. 769, 781 (E.D.Vir.1997) (holding that § 309 of CWA applies to persons who violate not just permit-holders) (rev'd on other grounds). Courts have held that "the CWA imposes liability both on the party who actually performed the work and on the party with responsibility for or control over performance of the work." *U.S. v. Lambert*, 915 F.Supp. 797, 802 (S.D.W.Va. 1996) (holding person who hired contractor liable for violation of exceeding permit limitations). *See also U.S. v. Avatar Hold-*

*ings, Inc.*, Civ. No. 93–281, 1995 WL 871260, *14 (M.D.Fla. Nov. 22, 1995) (holding that where a subsidiary that holds a NPDES permit violates § 309(d) of the CWA, a parent corporation is liable if it exercised sufficient control over the subsidiary such that "it may be considered a 'person who violates' "); *United States v. Board of Trustees of Fla. Keys Community College*, 531 F.Supp. 267, 274 (S.D.Fla. 1981) (holding contractor liable for violations of CWA despite his belief that the contracting college had obtained the requisite permit).

Defendant Perdue's argument that it cannot be held liable solely because it is an integrator stems from decisions by EPA and MDE that integrators do not need to be co-permittees with their contractors' chicken operations. Defendants' contention is overstated, however, because having a permit is not the basis of an integrator's potential liability. Rather, an integrator's liability is determined on the basis of its level of control over their contractors' chicken operations. The EPA acknowledged this basis of liability for integrators in its 2001 Proposed CAFO Rule, in which it stated "under the existing regulation and the existing case law, integrators which are responsible for or control the performance of the work at individual CAFOs may be subject to the CWA as an operator of the CAFO." 66 Fed.Reg. 2,960, 3,024 (Jan. 12, 2001). Had the EPA and MDE wanted to preclude integrators from liability for CWA violations, they could have written their regulations to make that explicit, but they did not do so. Instead, they have acknowledged that an integrator may be held liable for its CAFO's violations.

Defendant Perdue, in its reply, concedes in two footnotes that integrators can exercise sufficient control over their growers to be held liable under the CWA,[3] but con-

**3.** Perdue Reply 7 n. 4, 9 n. 6.

tend that in order to do so Plaintiff must "allege facts showing that Perdue exercises more control over the operation of the Hudson Farm than other integrators do over their contract growers." Perdue Reply 7–8. Perdue provides no legal basis for this assertion, however. The level of control other integrators exert is irrelevant to whether Plaintiffs have alleged sufficient facts regarding Perdue's control over the Hudson Farm CAFO to establish their liability for its alleged illegal discharges under the CWA.

Defendant Perdue's second argument arises in a footnote where it argues that Plaintiffs' allegations of control are merely conclusory and thus fail to state a claim. The Court disagrees. Plaintiffs state specific factual allegations as to the control Defendant Perdue exercises over the Hudson Farm CAFO. According to Plaintiffs, Perdue owns the chickens and provides all of the feed, fuel, litter, medications, vaccinations and other supplies necessary for the Hudson Farm CAFO to grow the chickens. Plaintiffs also allege that Perdue dictates the aspects of care for the chickens such as the type of buildings, equipment, and other facilities used in the operation, and makes periodic site visits to ensure compliance with its dictates. Because these allegations are not conclusory and are sufficient to state a plausible claim against Perdue at the motion to dismiss stage, Defendant Perdue's motion that the Court dismiss it as a Defendant will be denied.

### 2. Continuing Violation

■ A CWA citizen suit may be brought only if there is an ongoing violation of the act at the time the complaint is filed. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 64, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987); *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 521 (4th Cir.2003). Defendants argue that the "ongoing violation" requirement is not just a matter of fact to be properly pleaded, but that it is jurisdictional and thus requires Plaintiffs to prove the ongoing violations. Defendants then refer the Court to a significant amount of evidence, which it claims demonstrates that the violation was rectified prior to Plaintiffs' filing their Complaint. Thus, they argue that the action must be dismissed because it was not ongoing when Plaintiffs filed their Complaint.

■ Defendants are incorrect regarding Plaintiffs' obligations at this stage of the proceedings, however. Under the CWA, at the motion to dismiss stage, plaintiffs need only make a good faith allegation of continuous or intermittent violation to satisfy the jurisdictional requirement of the statute. *Gwaltney*, 484 U.S. at 64, 108 S.Ct. 376 ("The statute does not require that a defendant 'be in violation' of the Act at the commencement of suit; rather, the statute requires that a defendant be '*alleged* to be in violation.'"); *Am. Canoe Ass'n*, 326 F.3d at 521. If Defendants want to dispute the allegations and introduce extrinsic evidence, the appropriate procedural mechanism is a motion for summary judgment. *Gwaltney*, 484 U.S. at 64, 108 S.Ct. 376; *Am. Canoe Ass'n*, 326 F.3d at 521.[4] Other than refer to evidence outside the pleadings in their initial motion, Defendants did not contend that Plaintiffs' failed to allege, in good faith, sufficient facts demonstrating an ongoing violation. Nor did Defendants respond to Plaintiffs' arguments relating to those allegations. Thus, Defendants seem to concede that Plaintiffs have sufficiently pleaded an on-

---

4. Perdue stated in its motion to dismiss that it does not wish to convert it to a motion for summary judgment. Perdue Mot. 4 n. 2.

going violation and Defendants' motions to dismiss will be denied as to this basis.

### 3. Whether Plaintiffs Have Sufficiently Alleged A Discharge From The Hudson Farm CAFO

"To establish a violation of the CWA's NPDES requirements, a plaintiff must prove that defendants 1) discharged, i.e., added 2) a pollutant 3) to navigable waters 4) from 5) a point source." *Committee to Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F.3d 305, 308 (9th Cir.1993) (citing *National Wildlife Federation v. Gorsuch*, 693 F.2d 156, 165 (D.C.Cir.1982)). Defendants argue that Plaintiffs have failed to state a claim for violation of the CWA because they have not alleged facts connecting the pollutants they found downstream from the Hudson Farm CAFO to any discharge from the CAFO. Defendants contend that because Plaintiffs' Complaint does not specify for each of the alleged violations where specifically the water testing took place that the pollutants could have come from any other place upstream or downstream of the Hudson Farm CAFO. Construing the facts alleged by Plaintiffs and reasonable inferences from those facts in the light most favorable to Plaintiffs, as the Court must on a motion to dismiss, the Court disagrees. Here, Plaintiffs' Complaint raises a reasonable inference that the Hudson Farm CAFO, and more specifically the chicken operation, is the source of the pollutants discovered. Thus the motion to dismiss will be denied on this ground.

### V. CONCLUSION

For the foregoing reasons, Defendants' motions will be denied in part and granted in part. A separate order will issue.